To the day calendar, our first case is Vosse v. New York. Thank you, your honors. May it please the court. My name is Timothy Collins. I am the attorney for the appellant, Brigitte Vosse, and this is actually our second appearance before the Second Circuit, and we've already had two cases before the district court. This case involves a First Amendment claim, a challenge to sign regulations in the city's zoning resolution. Ms. Vosse has for years displayed an illuminated sign from her home, 17th floor of the Ansonia Building on Broadway and 73rd Street. The city's zoning resolution prohibits the display of illuminated signs above a 40-foot height restriction, prohibiting even traditional illuminated holiday decorations and political symbols like Ms. Vosse's peace symbol. Exempted from the height and illumination restrictions are flags, banners, and pennants displayed from lots used by civic, philanthropic, educational, or religious groups. Ms. Vosse had initially pressed two different arguments arising from this. I guess she could still put up a non-illuminated sign of less than 12 square feet, too. That is correct. There is an exemption actually to the definition of signs so that a non-illuminated 12 square foot sign could be placed. But the court should be aware that a sign, I mean, she has control over her window. This is sort of a turret, a high rise, and if she were to put up a non-illuminated sign, it would be terribly obscured during the day and invisible at night. And I think the court could see from the... vote for Trump or vote for Clinton, and you wanted to have it be on stilts and illuminated because otherwise you couldn't see it from the interstate that's a few miles away. Would you have an absolute right to do that such that any environmental concerns about such a sign would be trumped? I certainly don't think so, Your Honor. This case can be looked at in a couple of different ways. On the one hand, this case was remanded back to the district court because of the strong language in Ladue which said homeowners have a special interest. It's actually like intermediate scrutiny plus. There's little extra level of protection given to homeowners because it's a traditional, cherished means of political expression. But the Supreme Court, you know, they all live in suburbs and they were thinking about, and that case was about suburban type lawn signs and window signs that aren't illuminated, that don't have the same issues as either the cabin in the woods or intensely populated urban areas. Well, I think a lot of distinctions can be made, and practical distinctions certainly make sense in this context, but I think that the overriding concern has to be that the First Amendment doesn't stop at the second or third floor of an urban high-rise. Especially in this case, there's no other interest that's been stated in terms of danger, in terms of obstruction or distraction of drivers or the traveling public. I think that the cabin in the woods example would be perhaps extreme if there was some limitation generally on billboards, which was totally neutral on its face, then certainly that could be regulated. But to Judge Lynch's point, the First Amendment doesn't guarantee the best way of conveying your message, right? That is correct, but it does guarantee that you should have an effective way. And it does guarantee that you should have an effective way, and I think we cite the Knowles case out of Texas, which basically says that they cannot foreclose all effective means of presenting information, and if her sign were not illuminated, it would lose all effectiveness. The content of the sign is not before us, right? Content is not. It's a peace sign. The fact that it's a peace sign, peace sign has been recognized by the court in the Spence case as protected political expression. So it does have that element of sort of the highest level of expression protected under the First Amendment. But that's not an issue here, and we're not talking about speaker-based or content-based discrimination, which was addressed earlier. And, of course, we vigorously dispute that conclusion because this was also a facial challenge, so it should have captured situations that were not specific to Ms. Fossey, but the court has ruled it's the law of the case. But you're also sort of bringing that in, I don't mean this in a negative way, through the back door, right? Because the question of whether how this applies and how broadly it applies is relevant to whether it's a legitimate time, place, and manner restriction and whether the city's rationales are effective or sincere or not. Yes, Your Honor. I see my time is getting low. Absolutely. But what we're saying here, and Ledoux is very explicit on this, and the court didn't address this. The court below didn't address the fact that Ledoux asked for a little bit more scrutiny above intermediate scrutiny. And the court below didn't really adequately address the fact that Ledoux says when there are exemptions, and this is sort of the more narrow approach to this case, as opposed to just a generalized constitutional right for homeowners to display signs, we have a situation here where there's a clear statutory exemption. It's incumbent upon one of… Well, the city says there's not, and it's a very complex statute trying to trace through the way all the exceptions interact. I was wondering if there was anything at all in the record about how this is enforced or what happens in this zoning district. Are there illuminated pennants or banners on civic properties at all anywhere? In fact, Your Honor, there isn't anything in the record. The city hasn't offered anything. Of course, the burden of proof is on the city. But the city has actually taken the position that it has prosecutorial discretion. So, for instance, with the proliferation of holiday signs around various seasons, we don't have any indication of any prosecution of that. We have researched the cases and haven't found anything. So is it a menorah or a Christmas decoration or something? We haven't seen any cases where they've said, you know, you're going to get an $800 fine. I recognize the burden of proof is on them, but it seems to me it wouldn't be hard if there were lots of Santa Clauses and menorahs lit up in windows. It wouldn't be very hard to document that. And if there were civic organizations that had spotlit American flags on the tenth floor of a building, it wouldn't be hard to know about that. And yet there's nothing that suggests that the city does not live up to what it says it does, which is that it would enforce this regulation against such an illuminated flag or pennant. That's right. But I just remind the Court that these are motions for summary judgment. There has been no discovery. Our position was— Wait. These are motions for summary judgment pre-discovery. That's correct. Yeah. So there was no development. But I think the final point that I'll make here—I see my time has run—is simply that— Did you make a request for more discovery? No. No, Your Honor. And the other thing about this case, a little frustrating. When we came into this, our client had been fined for having a sign above the height restriction. It was only in response to our initial motion for summary judgment that the Court said, Oh, it's not the height restriction. It's actually the fact that it's illuminated that makes it illegal. But if I just may finally— Excuse me. Isn't that part of the height restriction? I mean, this is, again, the complication of reading these zoning regulations. There's a height restriction, but it only applies to illuminated signs, or there's an exemption for non-illuminated signs. There is an exemption for civic, philanthropic, educational, religious groups from all of the height restrictions, which include the illumination provision within the height restriction. It's absolutely clear. I've spoken to a number of lawyers about this. But what happened to Ms. Vossi, your client's problem, you said they said it was a violation of the height restriction, and then the judge figured out or claimed that it was a violation of the illumination provision. But aren't they the same, one and the same thing, in that, forget the civic people, for your client, it's an illuminated sign above the height restriction that's the problem. If it were non-illuminated, it would not violate the height restriction. That is correct, but the exception for those groups includes an exception from the illumination provisions. I understand that. But finally, and perhaps most importantly, where there is this exemption, where there is this dual treatment which undermines the credibility of the governmental interest that's asserted, and I think from Justice Kagan's concurrence in the Reid case suggests this, and I think our entire constitutional history, going back to 1938, suggests this. Going back to Caroline Products, footnote four, where the court said we have to have a more exacting scrutiny when individual liberties are denied or discreet and insular minorities are discriminated against. There's a very important case, and what happens here is if you do have this exemption, and I say to the court, this statute should be analyzed. I think it's very clear on the face the exemption exists. The city is absolutely wrong here. There has to be an explanation. Not at all. It's a credibility argument. It doesn't go to credibility of the substantial government interest that's being asserted. If the government wants to ban illuminated signs, and that's such an important governmental interest, the fact that there are exemptions, the fact that a YMCA or a religious organization could have a 20 by 30 flood-lit flag, a brightly lit, you know, white and yellow flag, undermines the credibility of the city's assertion that it has to eliminate illumination above 40 feet to achieve its aesthetic objectives. And it has to explain that. Thank you, Your Honor. You have reserved three minutes, so we'll hear from you again. Ms. Nutrella? Good morning. Elizabeth Nutrella, appearing on behalf of appellees. Your Honor, on remand, the district court followed this court's direction, and upon review of the record, correctly determined that this challenge regulation is a reasonable time, place, manner regulation that does not violate the strictures in Laudu. And, in fact, plaintiffs have conceded that there's a significant governmental interest here, but then they go on to question the credibility of our rationale, and they also go on to claim that we are punishing Ms. Vasi. But they do so without support. The city's rationale for zoning and regulation of signage is set forth throughout the zoning resolution. The case law is clear that regulation of lighting is a job of government and is zoning regulations fulfill that. The proliferation of signs in this city, of illuminated signs, could wreak havoc on the quality of urban life. And Judge Lynch's question concerning the issue of residential life, I believe, goes right to the heart of this case. Here we have something where, an issue where the city has narrowly tailored a regulation which doesn't at all address or target speech. We are not punishing Ms. Vasi for displaying a peace symbol. There is a regulation concerning illumination which serves the city's interest to protect urban quality of life and neighborhood aesthetics and visual clutter. And despite her repeated arguments that these rationales are not credible, she shows nothing to support that. But isn't it really a prohibition rather than a regulation? Nobody can see these signs, unlit signs. In other words, I think hers is 160 feet from the ground, something like that I saw on the record, right? So maybe 40 feet you can still see an unilluminated sign. But at 160 feet, if she put a peace sign in her window, nobody could see it. And that's probably true at 100 feet and 80 feet. So is it really a regulation and is it really a response to say, well, she can put a 12 by 12, I guess it's a 12 square foot sign in her window as long as it's not illuminated. So nobody can see it. Well, Your Honor, I actually think that the record doesn't bear that out. And I think just by the pictures, this is a large window and 12 square feet is very large. One can... Well, it's four by three, right? It's not 12 feet squared. It's 12 square feet. Well, she could have, though, a larger non-illuminated sign. She could have her sign, but she could also even have a larger one under the exemption for non-illuminated signs. No bigger than four feet by three feet, right? That's 12 square feet. Right, right. But how are you supposed to see it? Your Honor, actually, although I think factually the district court made a factual determination that you can see it. I think the photos show you can see it. Not at night, but I mean not at night necessarily. It depends, but it's not the red LED illumination that plaintiff would like to have 24 hours a day. And so the city has narrowly tailored its regulation. And as this court is well aware, we do not have to provide her chosen means of expression. It does not have to be the least restrictive means. We have enacted a zoning resolution which attempts to protect the urban quality of life while preserving her rights to free expression. And her alternative does not have to be her chosen choice. And that's well established in Ward and many cases in this area. And even in the more recent decision in Reed, the Supreme Court recognized that there can be restrictions on location, lighting, illumination, size. And that's what's happened here. We believe that the district court got it right and that this court should affirm, unless there are further questions. Can we just get back and follow up on Judge Lynch's question about how a city may be different from a suburb? If you have a height restriction, people who live above that certain height are entirely prohibited from having illuminated signs that people can see, right? Yes, there's a prohibition on illuminated signs. And in each district, there are certain districts, it's not simply 40 feet throughout the city. This is a tailored regulation where the illuminated signs are in the- Doesn't apply to Times Square. That's right. And that is, of course, and frankly, I recently learned that in Times Square, there are some requirements to require illumination, illuminated signs for certain frontages. Because that is that neighborhood's character. But the rest of the city is entitled to preserve a residential quality of life. And so in certain districts, there are height restrictions above 40 feet. In other districts, there are height restrictions above 25 feet. And in some districts, there are no restrictions. And that's what the city, under its police power, is entitled to do. To make reasonable, time, place, manner regulations that zoning is the ultimate measure. And here, we have done that to preserve residential character and quality of life. And we have done it in a way that provides ample alternatives of communication. Unless there are further questions, we rest on our brief. Thank you. Thank you. Mr. Collins, you have a few more minutes. Thank you, Your Honor. Just first of all, our position is not that the city cannot regulate illumination. But I would note that a lot of the- that Reed, first of all, did not involve a homeowner. And a number of the cases cited by the city did not involve homeowners. Only rich people have this right. Like many First Amendment rights, you have to own a home before you get this. Well, you could be a renter in New York. I mean, our position is- So a renter would have the same- Yeah, and that's- Of course, the landlord could stop the renter. That's absolute. But the condominium board is regulating here. And co-op boards do the same thing. And, indeed, my client has to go back to the condo board, if we prevail in this case, to make sure that she's clear to continue displaying her sign. How far up does this go? Well, if I lived on the top floor of one of these new Bloomberg Towers that go up 100 stories, would I be able to say, I need to be able to have not just an illuminated sign, because these little LED lights that Ms. Vossi has couldn't be seen from the ground on there. I'd have to have a pretty dramatic light. And it would have to be- just because of the shape of the building. So what I'd really need to be able to have an effective speech would be something that was illuminated so that it could be seen kind of for miles around. Your Honor- Is that like the kind of thing that- I mean, what's the logical consequence of your argument that the city can't incredibly restrain this? The city has the power, time, place, and manner, an excessively large sign, a sign which is perhaps dangerous in some way, distracting to the public, or may have independent bases for banning. But here's the irony of this case. The city's position is that a flag, banner, or pennant cannot be illuminated because of the nature of the material that it's made of. That means- and the court below basically said flag, banners, and pennants, having been exempted, she didn't have standing in the first instance because she wasn't flying a flag, banner, or pennant, implying that if she had been, it would have been illegal, which means she could fly a 20-by-30-foot flag, brightly colored with massively powerful floodlights, and it would be legal under the city's interpretation. And I thought the city's interpretation was not with floodlights. No. The city's interpretation is that the definition of an illuminated sign is one that projects light or reflects light. The city's interpretation is that flag, banners, and pennants, because they're made of cloth, cannot reflect light, which we think is just absurd. Scientifically wrong. You couldn't see it if it didn't reflect light. Thank you, Your Honor. And so she would have the ability to fly this very large, brightly lit flag under their interpretation, under the court's interpretation, and that would be perfectly legal. What she can't do is a small peace symbol illuminated by LEDs. The critical point here is that the ladue asks for more than we got from the court below. The court below, this court, and the court below the second time that it reviewed this case, has not yet thoroughly examined the zoning resolution, which we think on its face, as a matter of common statutory interpretation, exempts these groups from the illumination restriction as well as the height restriction. And that exemption undermines the notion that this is narrowly tailored. It undermines the significance of the governmental interest at stake. And most importantly, at least in my mind, perhaps not in constitutional doctrine, maybe there is enough out there to say that general illumination restrictions are sufficiently understood, the court can take notice of that, and there doesn't need to be a huge legislative record on that, although there are obligations, and we've cited cases which say that this should be clear from the text or there should be an explanation as to why they do this. But even setting that aside, if there is an exemption, they have to explain the difference. Under the First Amendment, if it's not content-based, the First Amendment does not require a perfect zoning law that all the exemptions match up and they work the way they should. It's just not required, right? That's correct, Your Honor. It's correct. But if there are exemptions on something like this, illumination, where the issue is comparable, in fact could be more severe among the exempted groups in terms of creating more illumination, I think that the public deserves to know why I can't put an illuminated menorah or a Christmas decoration in my window, why I would be subject to an $800 fine if I were to do that because I'm perhaps a few feet above my neighbor who's below the 40-foot restriction. And yet the YMCA down the road, and I shouldn't pick on the YMCA, it's a wonderful organization, but any other civic, not-for-profit, philanthropic, religious organization is allowed to display very brightly lit things within the same zoning district. We're not disputing the issue of whether they could make distinctive treatment for different zoning districts. Thank you, Mr. Cuff. Thank you. We'll reserve decision on this case.